IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 07-423 |
| ANTHONY VAZQUEZ : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                                                                 **February 16, 2022**

The Defendant, Anthony Vazquez has filed, pro se, a Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i). Vazquez, however, has not shown the requisite extraordinary and compelling circumstances necessary to warrant such a reduction of his sentence and his motion must therefore be denied.

**CASE HISTORY**

On the night of May 2, 2007, several Philadelphia police officers were conducting surveillance for drug activity in the area of Reese and Indiana Streets in Philadelphia. Over the course of the night, the officers observed some six transactions with two suspected drug traffickers. Following each transaction, the observing officers transmitted a description both of the individuals seen purchasing what were believed to be illegal drugs as well as the vehicles in which they arrived to several other officers waiting nearby. All of those individuals were stopped and searches conducted. Gov't's Resp. in Opp. to Def's Mot. to Dis. for Lack of Fed. Subj. Mat. Juris., 2, ECF No. 22. Vazquez was one of the individuals stopped shortly after leaving the scene of a transaction and was one of four individuals occupying a grey car. *Id.* at 2-3. After he and the three others had vacated the car in compliance with the officers' commands but before he could be patted down for weapons, Vazquez fled the scene, throwing a clear jar with a green lid as he ran. *Id.* Vazquez was

tackled and as the officers were wrestling with him, they saw the butt of a gun sticking out of the pocket of his pants. A .357 magnum revolver was recovered from Vazquez's person. Immediately following his arrest, Vazquez identified himself using an alias. The contents of the jar which he threw were analyzed and found to contain PCP. The police later determined the revolver had not been manufactured in Pennsylvania. *Id.* at 3-4.

On July 24, 2007, a federal grand jury sitting in the Eastern District of Pennsylvania returned a single-count indictment against Vazquez charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On March 24, 2008, immediately before his trial was to begin, Vazquez acknowledged he was a felon and pled guilty to the charge. He was sentenced on November 25, 2008 to a term of imprisonment of 198 months to be followed by five years' supervised release, a $1,500 fine, and $100 special assessment. The sentence was upheld by the Third Circuit Court of Appeals.

On January 4, 2021, Vazquez filed this motion for reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that his health conditions place him at high risk for serious illness or death from the COVID-19 pandemic. Specifically, Vazquez asserts he suffers from asthma, an irregular heartbeat and is overweight. Def's Mot. for Sent. Reduct. 4, ECF No. 70. The Government opposes Vazquez's motion.

**LEGAL STANDARDS**

Generally speaking, federal courts "may not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.,* 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582(c)). There are, however, a few, limited exceptions to this general rule. One such exception is provided in the statute upon which Vazquez premises this motion: 18 U.S.C. § 3582(c)(1)(A), which reads as follows:

**(c) Modification of an imposed term of imprisonment.** – The court may not modify a term of imprisonment once it has been imposed except that –

**(1)** in any case –

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

**(i)** extraordinary and compelling reasons warrant such a reduction; or

**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The § 3553(a) factors which are applicable in Vazquez's case are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C).

3

The Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since passage of the First Step Act which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their own behalf. By its plain language, the Policy Statement set forth at U.S.S.G. § 1B1.13[1] is limited to compassionate release motions initiated by the Bureau of Prisons. The Policy Statement is therefore not binding on district courts considering defendant-initiated compassionate release motions and, in determining whether extraordinary and compelling reasons exist, courts are free to consider other reasons raised by a defendant that are not specifically contemplated in the Policy Statement. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021); *United States v. Millhouse*, Nos. 20-3632, 21-1078, 2022 U.S. App. LEXIS 3530, at *4 (3d Cir. Feb. 9, 2022) (*per curiam*). The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions. *Andrews*, 12 F. 4th at 260. District courts are vested with discretion in their weighing of the §

---

[1] The U.S.S.G. § 1B1.13 Policy Statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that –
>
> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n. 1B. Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id,* cmt. n.1B, or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated. *id.,* cmt. n. 1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. The defendant bears the burden of proof by a preponderance of the evidence on motions for compassionate release. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

Vazquez has satisfied the administrative requirement that he first ask the Bureau of Prisons to file a compassionate release motion on his behalf. On November 20, 2020, Vazquez filed a Request for Reduction in Sentence with the Warden of Petersburg Medium FCI where he is presently incarcerated asserting he "fit the criteria" for compassionate release because he had asthma and irregular heartbeat. The request was denied by Warden Andrews on December 10, 2020. Vazquez then filed this motion two weeks later.

In determining whether the requisite extraordinary and compelling reasons are presented in this case, the Court first observes that since its declaration in March, 2020, the COVID-19 pandemic has sickened millions of people worldwide, over 77 million of whom are in the United States. There have been nearly 917,000 deaths in the U.S. alone. www.covid.cdc.gov/covid-data-tracker/#datatracker-home. Despite the fact that some 80.7% of people 5 years and older have received at least one shot of a COVID-19 vaccine, community transmission remains "high." www.covid.cdc.gov/covid-data-tracker/#datatracker-home. Although the COVID-19 vaccines are effective at preventing most infections, they are not 100% effective. Fully vaccinated people who get breakthrough infections, however, tend to have less severe symptoms and are less likely to suffer severe illness than those who are not vaccinated. www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19. These include: cancer, chronic kidney, liver and lung diseases, diabetes, heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension, having an immune-compromised state/weakened immune system and obesity. www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html.  The most recent medical records provided for Vazquez indicate he is 42 years old and has current diagnoses of asthma, symptomatic bradycardia, and obesity.[2]  Exhibits to Gov't's Resp. in Opp. to Def's Mot. for Comp. Rel., ECF No. 74.  His past medical history includes lower extremity edema, urinary tract infection with enlarged prostate, low back and right shoulder pain due to a possible small labral tear, and hemorrhoids.  Vazquez was treated for these conditions with a compression garment, Finasteride, Ibuprofen and Hydrocortisone cream and they have since been resolved.  *Id.*  Vazquez thus suffers from at least two of the conditions listed in the CDC's "higher risk" categories.[3]

However, Vazquez's records also reflect he is receiving regular treatment and care for these conditions in the prison setting and his conditions are under control.  Presently, Vazquez requires only an Albuterol inhaler to use in the event of an asthma attack.  He recently had a full panel of laboratory tests run which produced normal results.  Further, Vazquez received two doses of the Pfizer COVID-19 vaccine on April 7 and April 27, 2021 and the Moderna COVID-19 booster on November 17, 2021.  *Id.*

This Court has previously recognized that "COVID-19 poses a unique challenge to the prison system."  *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020).  In response to

---

[2]  The CDC defines obesity as having a body mass index (BMI) of greater than or equal to 30 kg/m and less than 40 kg/m.  Overweight is defined as having a BMI of greater than or equal to 25 kg/m but less than 30 kg/m.  Vazquez has a BMI of 31.

[3]  Bradycardia is defined as a slower than normal heartbeat. Although it is not uncommon in healthy young adults and trained athletes, it can be a serious problem if the heart rate is very slow and the heart cannot pump enough oxygen-rich blood to the body.  Serious cases of bradycardia may be treated through implantation of a pacemaker to help the heart maintain an appropriate rate.   www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc.  Moreover, asthma as a co-morbidity factor for COVID-19 has now been noted by the CDC to be supported by "mixed evidence."  www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19. Mitigation measures include restricting and/or limiting visits such that all are either suspended altogether or are non-contact; restricting the number of visitors allowed, and decreasing the length and frequency of visits; mandating testing and masking of all inmates, staff, and visitors; restricting inmate movement within the institutions to maximize social distancing; and mandating frequent cleaning of all facilities. In addition, daily symptom and temperature checks of inmates and staff are conducted, and all new inmates are quarantined for 14 days following their arrival and are not released into the general population until they have also had a negative COVID test. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

The operational status of each institution is determined based on a number of health indicators, including the level of transmission within each institution and in the surrounding community. Although mitigation measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status. www.bop.gov/coronavirus/covid19_status.jsp.

Vazquez is incarcerated at Petersburg Medium FCI in Hopewell, Virginia. This facility has a total population of 1,511 male inmates. Presently, it has 50 COVID-19-positive inmates and 2 COVID-19 positive staff members and is operating at level 3, the most restrictive operations level requiring enhanced and frequent cleaning of all areas, masking of all inmates and staff, and daily symptom checks of any and all inmates and staff leaving and re-entering the facility. Normal operations and all visiting have been suspended until further notice. Since the inception of the pandemic at Petersburg Medium FCI, there has been only one inmate death and no staff deaths to date. www.bop.gov/locations/institutions/sch/.

In view of the ongoing operational restrictions and precautions implemented in the facility where Vazquez is housed, the health care he is receiving, and his full and boosted vaccination status, the Court finds Vazquez to be in no imminent danger of suffering severe illness or death as a consequence of the ongoing coronavirus pandemic. The Court thus does not find Vazquez's health conditions present extraordinary and compelling reasons for compassionate release. However, in determining whether the requisite extraordinary and compelling circumstances are presented here, the Court must also consider the sentencing factors articulated in 18 U.S.C. § 3553(a).

In this regard, the Court finds Vazquez was 28 years old at the time he committed the crimes at issue in this case. There is no question that his offenses were serious – Vazquez was caught purchasing a significant quantity of PCP and found to be in possession of a loaded .357 revolver at the time. Prior to this offense, Vazquez had been convicted on six different occasions of drug-related offenses which occurred between 1998 and 2002, some of which he committed while on parole or supervised release. Thus, at the time he committed the offense to which pled guilty in this Court, Vazquez had been involved in criminal activity for most of his adult life.

The Court carefully considered all of these factors in sentencing Vazquez in 2008. In reconsidering them now, the Court again finds Vazquez's criminal history and his characteristics, together with the nature and circumstances of the crimes in this action warranted the sentence imposed and that the sentence properly reflected this background and was appropriate to promote respect for the law, protect the public from Vazquez's commission of further crimes, deter future criminal conduct and punish him. While his recent prison disciplinary record has been good overall and he has earned roughly 21 months in good conduct time, he does have a number of infractions on his record. Specifically, Vazquez was disciplined for possession of alcohol in 2016,

possession of unauthorized items in 2015 and 2012, and for assault without serious injury in 2011. His estimated release date is May 18, 2023 and he is eligible for consideration for home confinement on November 18, 2022.  Although the Court recognizes Vazquez has served most of his sentence, he is now still only 42 years old.  Although he has taken a number of courses and earned his GED while imprisoned, rehabilitation is not, in and of itself, a sufficient reason to grant compassionate release.  In fact, Vazquez's history suggests that previous terms of imprisonment have done little, if anything, to stop him from repeating his past mistakes.  Thus, after weighing all of the foregoing factors, the Court simply cannot find compassionate release to be warranted in Vazquez's case.  His motion is therefore denied.

    An appropriate Order follows.

BY THE COURT:

Juan R. Sánchez
_____
Juan R. Sánchez,      C.J.